UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| RODNEY COCHRAN, | ) | |
| | ) | |
|     Plaintiff, | ) | Civil Action No. 5:09-302-JMH |
| | ) | |
| V. | ) | |
| | ) | |
| CURT FOLGER, et al., | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
|     Defendants | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CURT FOLGER, et al., | ) | |
| | ) | |
|     Third-Party Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES WILLIAMS, II | ) | |
| LAILA WILLIAMS, | ) | |
| | ) | |
|     Third-Party Defendants. | ) | |

\*\*    \*\*    \*\*    \*\*    \*\*

This matter is before the Court on a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, filed by Defendants Curt Folger, individually and in his official capacity as Sheriff of Lincoln County, Kentucky, Dan Gilliam, individually and in his official capacity as Deputy Sheriff of Lincoln County, Kentucky and Don Gilliam, individually and in his official capacity as Deputy Sheriff of Lincoln County, Kentucky (hereinafter collectively referred to as "Defendants"). [Record No. 46]. Plaintiff Rodney Cochran filed a timely response. [Record No. 54]. Defendants

replied in support of their Motion for Summary Judgment. [Record No. 55]. This matter is now ripe for review.

## I. FACTUAL BACKGROUND

Third Party Defendants Charles and Laila Williams caused a Notice of an Eviction Hearing to be served upon Plaintiff Rodney Cochran ("Cochran"), to whom they leased a home, located at 3700 Hwy 2141, Stanford, Kentucky 40484. The Notice was based upon a Forcible Detainer Complaint, filed on August 18, 2008. At the time of filing, Cochran had not paid his August rent. The Williamses alleged in their Complaint that Cochran was partially delinquent in his rent due in July in the amount of $350.00, and August, for the full month's rent of $750.00, and owed fees for late payments of $25.00 for each last five (5) months. Thus, the total amount Cochran owed to the Williamses was $1,225.00 at the time of the Forcible Detainer Complaint.

It is not clear from the record whether Cochran received notice of the hearing or was in attendance at the hearing. Nonetheless, on August 28, 2008, the district court found, as stated in the Judgment of Forcible Detainer, that Cochran "was guilty of forcible detainer as charged and that Plaintiff have [*sic*] restitution of the premises, 3700 Ky Hwy 2141 Stanford, Ky and recover of the Defendant the costs expended herein." Cochran does not challenge the validity of the "Judgment in Forcible Detainer" or the "Eviction Notice: Warrant for Possession," which

was issued on September 5, 2008, and executed on September 8, 2008.

Instead, Cochran's Complaint focuses on the actions by the Defendants and Third Party Defendants during the execution of the Eviction Notice: Warrant for Possession on September 8, 2008. Williams and Deputy Sheriffs Don Gilliam, Bill Schnitzler and Dan Gilliam arrived at Cochran's home at some point during the day to execute the Warrant for Possession. It is undisputed that the Warrant for Possession, and the Judgment in Forcible Detainer on which it was based, were the only authority for the Williamses and the deputy sheriffs' actions that day. It is further undisputed that the deputy sheriffs only reviewed and relied upon the Warrant for Possession for their actions.

According to Don Gilliam's Affidavit, after reviewing the Warrant for Possession, he realized that it was silent as to Cochran's personal property located at the premises. Don Gilliam told Mr. Williams to secure Cochran's personal property as he expected that Cochran would want to take it following the eviction. Mr. Williams advised Don Gilliam that the Lincoln County Attorney had told him that Cochran's personal property could be sold to recover Mr. and Mrs. Williams' losses. Don Gilliam states that he then contacted the county attorney and was told that Mr. Williams had a "right to sell the property". Using a key to enter the residence, Mr. and Mrs. Williams, with the assistance of others, removed Cochran's personal property from the residence.

Cochran was at work when he received a message from his neighbor, Dr. Shane Randolph, indicating that the Williams and the deputy sheriffs were at Cochran's home. Cochran's mother and sister were already on site by the time he arrived.

The deputy sheriffs on site threatened to restrain and/or arrest anyone who attempted to interfere with the Williams' procurement of Cochran's personal property. Cochran, his neighbors, and family made calls to 911 and the Kentucky State Police throughout the day to try to stop the Williams from taking Cochran's personal belongings. Dr. Randolph attempted to call the Sheriff, Curt Folger, but was informed that he was out of town on September 8, 2008 and could not be reached.

Don and Dan Gilliam were both present on the premises during the removal of Cochran's personal property. Don Gilliam admits that he paid $100 to the Williams for a television that was removed from Cochran's home. He states that he purchased the television for use at the Sheriff's office. Cochran's guns and prescription medications were also taken by the deputy sheriffs. At the Williams' request, the guns were turned over to Mr. Williams' uncle, Constable John Williams the next day.[1]

---

[1] Based on evidence in the record, it appears that the sale of the Cochran's firearms alone would have satisfied the amount claimed by the Williams in the forcible detainer complaint. However, the Williams confiscated not only the guns, but personal items, keepsakes, and a substantial amount of metal and valuable tools from Cochran's garage. The claimed value of these items, while not verified, substantially exceeds the debt allegedly owed

Cochran asked the Williams for the return of his personal property and offered money in exchange for the return of his property. Those requests were denied. To date, none of Cochran's personal belongings have been returned to him.

Cochran filed this action pursuant to 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments, alleging violations of his constitutional rights by Defendants, who serve as Sheriff and Deputy Sheriffs of Lincoln County, Kentucky. Cochran contends that Defendants were acting under the color of the authority vested in them by Kentucky statutes and the Kentucky constitution when they acted upon an eviction notice and placed Third Party Defendants, Charles Williams, II and Laila Williams, in possession of the premises located at 3700 Kentucky Highway 2141, Stanford, Lincoln County, Kentucky. Cochran alleged that Defendants carried out the eviction in an "objectively unreasonable" manner that permitted Cochran's personal property to be taken away by unknown parties, and that Defendant Folger consciously chose to provide inadequate training to his deputies.

According to Cochran's Complaint, this conduct violated Cochran's constitutional rights: the right under the Fourth Amendment to be secure in one's person, houses, papers, and effects against unreasonable searches and seizures; the right under the Fifth Amendment not to be deprived of property without due process

to the Williams.

5

of law; and the right under the Fifth Amendment not to have property taken for public use without just compensation. In addition to these federal law claims, Cochran asserted a state law claim for the tort of outrage, and made an additional claim for punitive damages.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party, which in this case is the plaintiff, "cannot rest on [his] pleadings," and must show the Court that "there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). In considering a motion for summary judgment the court must construe the facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

When the question is one of qualified immunity, however, the analysis is somewhat altered. In ruling on a motion for summary judgment based on the defense of qualified immunity, the existence of a disputed, material fact does not *necessarily* preclude summary

judgment. Even if there is a material fact in dispute, summary judgment is appropriate if the Court finds that – viewing the facts in the light most favorable to the plaintiff – the plaintiff has failed to establish a violation of clearly established constitutional law. *Saucier v. Katz*, 533 U.S. 194 (2001); *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1998).

## III. DISCUSSION

Defendants allege that they are entitled to summary judgment in their favor on all of Plaintiff's claims. For the reasons that follow, the Court will deny the motion for summary judgment as to Plaintiff's Fourth Amendment seizure claim and Fourteenth Amendment due process claim brought pursuant to 42 U.S.C. § 1983; grant the motion for summary judgment as to Plaintiff's Fifth Amendment due process and takings claims brought pursuant to 42 U.S.C. § 1983; grant the motion for summary judgment as to all Defendants in their official capacities; grant the motion for summary judgment as to Defendant, Curt Folger, for failure to train; grant the motion for summary judgment on the state law claim of intentional infliction of emotional distress; and deny the motion for summary judgment as to punitive damages.

## A. Applicable State Law

This motion necessarily turns, in part, on whether the Williams had a legal right to physically remove and convert Cochran's personal property under Kentucky state law. Defendants

basic premise for all arguments in support of the Motion for
Summary Judgment is that the Williams had the right to obtain
Cochran's personal property based on the Warrant for Possession and
Kentucky law.  However, "[i]t is well settled that a proceeding of
forcible detainer raises no issue except that of possession."
*Stark v. Scott,* 165 S.W.976 (Ky. 1914).  Defendants argue, without
citing to any precedent, that they were merely executing a warrant
on the "automatic" lien that the Williams obtained during the
forcible detainer proceeding and by operation of KRS 383.070.
However, while KRS 383.070 discusses the priority of a landlord's
lien on the personal property of a tenant, this statute does not
address the process for attachment of a lien and it does not
authorize the actions taken by Defendants and Third Party
Defendants.  There is no evidence to suggest and, in fact, no one
argues that the alleged potential lien had attached, that the
Williams made any attempt to follow the attachment procedure, *see*
KRS 383.030, or that the Williams made any attempt to procure any
other form of relief available to landlords for delinquent rent as
specified in the Kentucky Revised Statutes.[2]

Moreover, the Warrant for Possession procured by the Williams,
and the Judgment in Forcible Detainer on which it relies, are not
facially sufficient authority for the possession and sale of

---

[2]    KRS 383.280 makes it clear that a forcible detainer action
does not bar actions for trespass, waste, rent or profits.

Cochran's personal property. The Judgment in Favor of Plaintiff in Forcible Detainer is a form document, entered by the Lincoln County District Judge, which merely states that Cochran "was guilty of forcible detainer as charged and that Plaintiff have restitution of the premises, 3700 Ky Hwy 2141 Stanford, Ky and recover of the Defendant the costs expended herein." Neither the costs expended in the forcible detainer action, nor the amount of past due rent and fees are stated in the document. The Eviction Notice: Warrant for Possession, states:

> To the Sheriff or any other Constable of Lincoln County: Defendant [Cochran] on 8-28-2008 was found guilty of a forcible detainer of the premises located at 3700 HWY 2141, Stanford, KY 40484 to the injury of the Plaintiff [Mr. and Mrs. Williams]. Defendant having failed to file an appeal on or before the seventh day after the finding, and upon request of the Plaintiff, you are commanded, in the name of the Commonwealth of Kentucky, to put the Plaintiff in possession of the premises, and to make due return to the Court within 8 days showing you have executed this warrant.

It does not address personal property, and it does not state any amount that the Williams were entitled to recover for costs or rent. The Warrant for Possession only addressed and authorized the physical possession of the premises. Thus, the Williams had no legal right to convert Cochran's personal property at the time of the eviction.

**B. 42 U.S.C. § 1983**

To state a valid claim under 42 U.S.C. § 1983, Plaintiff must show that Defendants (1) violated one or more of his constitutional

or federal statutory rights while (2) acting under color of state law.  *See Sigley v. City of Parma Heights,* 437 F.3d 527, 533 (6th Cir. 2006).  If a government official performs a discretionary function, as here, the qualified immunity doctrine may bar the lawsuit and fully shield the official from liability.  *See id.* at 536.

## C.   Deprivation of Fourth Amendment Rights

In pertinent part, the Fourth Amendment, made applicable to the States by the Fourteenth Amendment, provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable seizures, shall not be violated..." U.S. Const. amend. IV.  The Supreme Court has recognized that the Fourth Amendment "protects two types of expectations, one involving searches, the other seizures." *Thomas v. Cohen*, 304 F.3d 563, 569 (6th Cir. 2002) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).  "[A] seizure of property occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Thomas*, 304 F.3d at 569 (quoting *Jacobsen,* 466 U.S. at 113)).  Cochran's possessory interest in his personal property was clearly established at the time of the seizure.

Participation of deputy sheriffs in an improper seizure of personal property for sale constitute a seizure in violation of the Fourth Amendment.  *Soldal v. Cook County, Illinois*, 506 U.S. 56 (1992).

Defendants seek to distinguish *Soldal* on two grounds. First, in *Soldal*, the owners of a mobile home park had begun eviction proceedings, but had not yet obtained judgment in their favor. Defendants argue that because the Williams had obtained a Warrant for Possession and Judgment in the forcible detainer action, this case is distinguishable. Second, the owners of the mobile home park literally tore the mobile home off of its foundation and transported the home, with the tenants personal belongings, to another location. Thus, Defendants also seek to distinguish *Soldal* because the Court address the seizure of the entire home, rather than just tenant's personal property, which is at issue here.

These facts are not sufficient to distinguish *Soldal*. The Warrant for Possession does not reach the disposition of Cochran's personal property. Thus, the landlords and deputy sheriffs were proceeding in the absence of any legitimate power to do so. The Williams and the deputy sheriffs had no more authority to seize Cochran's personal property for sale than the parties in *Soldal and Jacobsen* in the absence of a warrant or other order for same. Moreover, the reasoning behind the Supreme Court's decision in *Soldal* applies not only to the seizure of the home, but also to the seizure of the  personal property in the subject home.[3]

---

[3]    This Court notes that the sheriff's deputies in *Soldal*, similar to the deputies in this case, had a conversation with the county attorney prior to or in the course of supervising the actions of the owners of the property. *Soldal*, 506 U.S. at 58.  As the Court in *Soldal*, this Court does not view this fact as material

To be actionable, "a seizure must also be objectively unreasonable." *Jacobsen*, 304 F.3d at 574. Based on the circumstances surrounding this eviction, the deputy sheriffs were objectively unreasonable when they allowed the Williams to take and sell Cochran's personal belongings without a court order. At the time of the execution of the warrant, the Williams did not have the legal authority to take possession of Cochran's personal property and convert it to their own use, or the use of others. As described above, the only authority under which the parties were acting was the Eviction Notice: Warrant for Possession, which was silent as to personal property. Don Gilliam recognized that the Warrant for Possession did not automatically confer upon the landlord the ability to take permanent possession of the tenant's personal property, which is why he initially directed Mr. Williams to secure Cochran's personal property to return to him. Even assuming *arguendo* that the Forcible Detainer Judgment granted an automatic lien on all of Cochran's personal property for the amount owed, a reasonable deputy sheriff would recognize that the amount owed must be specified. It is contrary to common sense to assume that an obscure reference on a form document to an unspecified amount owed for costs in a judgment would allow a landlord to recruit the support of the deputy sheriffs in taking each and every personal item in a tenant's possession, from guns to clothes and

to the issues before it.

from sentimental photographs to family heirlooms.

Violation of an individual's Fourth Amendment right to be free of unreasonable seizure does not, however, require physical seizure of the personal property in question by the officers, although that occurred in this case. Contrary to Defendants' arguments, the officers' presence in their official capacity coupled with threats of legal action or restraint for interfering with the unlawful seizure of Cochran's personal property were sufficient to qualify as a state action and seizure in violation of Cochran's Fourth Amendment rights. The officers in *Soldal* were present on the property to keep peace as employees of the trailer park wrenched a mobile home from its restraints to move it. *Soldal*, 506 U.S. at 58-59. *Soldal* rejected the proposition that the officers were required to physically assist in the eviction for the officers to have violated the tenants Fourth Amendment rights. *Id.* at 62. Cochran was present and would have been able to secure his personal property but for the threats of legal action and restraint by the deputy sheriffs. Thus, Defendants' argument Dan Gilliam's role during the seizure was not material to the seizure and, therefore, no claim could be made against him, must fail. Dan Gilliam's presence on the premises was a state action that resulted in a meaningful interference with Cochran's possessory interests in his property under applicable precedent and the claim will not fail on this ground alone.

**D. 14th Amendment claims**

As a preliminary matter, the Court notes that "[c]ertain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands." *Soldal*, 506 at 70; *See Thomas,* 304 F.3d at 578. Accordingly, each constitutional provision will, thus, be addressed in turn. *Id.* Count II of Cochran's Amended Complaint alleges that Defendants "deprived the Plaintiff of his property without due process of law contrary to the Fifth Amendment... incorporated in the Fourteenth Amendment." Cochran further avers that "Plaintiff's personal property was taken for public use without just compensation... under the Fifth Amendment as incorporated in the Fourteenth Amendment" in Count III of the Amended Complaint.

Turning first to the due process claim in Count II of the Amended Complaint, Cochran specifically alleges that Defendants violated his Fifth Amendment right to due process, and also alleges a violation of his Fourteenth Amendment rights. Defendants are not agents of the federal government whose actions would be governed by the Fifth Amendment, so this Court will view Cochran's claims as a procedural due process claim solely under the Fourteenth Amendment for which the analysis is the same. *See Paul v. Davis*, 424 U.S. 693 (1976).

Procedural due process claims are examined in two parts. First, "the court must determine whether the interest at state is

a protected liberty or property right under the Fourteenth Amendment." *Thomas v. Cohen*, 304 F.3d at 576. Then, the court must consider whether the deprivation of that right contravened notions of due process. *Id.* With respect to the first prong of the examination, Cochran clearly had a property interest in the personal belongings in his home, and he was clearly deprived of that right on the sheriff's deputies' supervision. Accordingly, the Court must now consider whether that deprivation violated his right to due process.

Generally, "due process requires notice and a hearing prior to eviction." *Thomas*, 304 F.3d at 281. The same must be true of the seizure of personal property to satisfy rent owed. It is well established that "[i]n situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking." *Zinermon v. Burch*, 494 U.S. 113, 132 (1990). While there were notice and a hearing before the eviction in this case, there was no notice, or even putative authorization, of the seizure of personal property. Kentucky provides an appropriate process for attachment of a lien on personal property, *see* KRS 383.030, and for seizure of belongings, but that process was not provided in this instance.

"The government's interest in enforcing a landlord's unauthorized directives pales in comparison to the importance of

[tenants'] interests in maintaining possessory rights to their place of residence." *Thomas*, 304 F.3d at 580. Again, the Court concludes that the same rationale applies to a tenants interests in continuing possessory rights to personal property. Where, as here, that personal property consists of each and every item that one has accumulated over one's lifetime, that interest is worthy of protection and outweighs the importance of the government's interest in enforcing a *potential* lien interest in personal property.

In support of their Motion for Summary Judgment, Defendants rely on *Parrat v. Taylor,* 451 U.S. 527 (1981), as clarified by *Daniels v. Williams,* 474 U.S. 327 (1986), and *Davidson v. Cannon*, 474 U.S. 344 (1986), for the proposition that there is no cause of action under 42 U.S.C. § 1983 where state tort law furnishes all appropriate process, or where the deprivation cannot be predicted. Defendants, however, ask the Court to mis-apply *Daniels* and *Davidson*.

The Supreme Court decision of *Parrat*, and its progeny, *Daniels* and *Davidson,* do not apply to the instant case. Those cases deal with a government official's *negligent* deprivation of life, liberty or property. *See Daniels v. Williams,* 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986). Defendants' actions in this case were intentional and were predictable, rather than random. Moreover, *Parrat* addresses a "special case of the general

*Mathews v. Eldridge* analysis, in which post-deprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide." *Flatford v. City of Monroe*, 17 F.3d 162, 168 (6th Cir. 1994) (quoting *Zinermon, 499 U.S. at 128*). "The Due Process Clause requires truly remedial process at a meaningful time, which is determined by balancing the competing interest involved." *Flatfort*, 17 F.3d at 168-9 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976).

Defendants argue that the post-deprivation remedies available to Cochran, which they do not specify and which the court is at a loss to identify, were sufficient, and therefore Cochran was afforded due process. This argument must fail. Defendants do indicate that a tort of conversion or wrongful detention of personalty may lie against Third Party Defendants; however, such an action would not address the particular wrongs committed by the sheriff's deputies. This Court finds that the state remedies available to Cochran were not sufficiently remedial or timely under the circumstances and, thus, post-deprivation remedies are inadequate in this instance. *See Thomas, 304 F.3d 563.* Based on the foregoing analysis, this Court determines that Defendants violated Cochran's 14th Amendment rights.

## E.  5th Amendment claims

With respect to Cochran's claim that his property was taken

without just compensation, the Court determines that this claim must fail.  To establish a Fifth Amendment takings claim, Cochran must establish that his property was taken for public use without compensation.  See *Kelo v. City of New London, Conn.*, 545 U.S. 469 (2005).  Cochran does not aver in his Complaint, or demonstrate in his Response, how his personal belongings were taken for "public use."  The facts of this case do not support this contention.  While Cochran's personal property was taken and put into the possession of the Williams, this does not qualify as "public use."  Instead, this is an example of Defendants taking private property, without process, and placing it in the possession of another private person, for private use.  To the extent that Cochran argues that Don Gilliam's purchase of the television for use by the sheriff's department was a government taking for public use, the Court is not convinced that this would qualify as a public use sufficient to underpin a constitutional violation, considering the benefit to a private party and the absence of payment from public coffers.

**F.   Qualified Immunity.**

Qualified immunity shields government officials from "liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Humphrey v. Marbry*, 482 F.3d 840, 846 (6th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S.

18

800, 818 (1982)). The qualified immunity doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Id*. at 847. The task before the Court may, thus, be understood as follows:

> In reviewing claims for qualified immunity, we conduct a two step analysis. First, we consider whether taken in the light most favorable to the party asserting the injury... the facts alleged show the officer's conduct violated a constitutional right. If the answer is yes, we next ask whether the right was clearly established ... in light of the specific context of the case. For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand what his is doing violates that right. The question of whether an official is entitled to qualified immunity is a question of law which must be determined by the Court. While the sequence of this two-step inquiry is often appropriate, it is no longer mandatory.

*Binay v. Bettendorf*, 601 F.3d 640 (6th Cir. 2010) (internal citations and quotations omitted); see also *Miller v. Sanilac County,* 606 F.3d 240, 247 (6th Cir. 2010).[4]

To evaluate the threshold issue of whether Defendants are due qualified immunity under federal law, the Court must first

---

[4]    *Miller* notes that *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) applies a "three-step test which further considers whether a reasonable person would have known about the right and whether the officials actions were objectively unreasonable," but they applies the two prong test in accordance with more recent precedent. *Miller*, 606 F.3d at 247. As discussed throughout, this Court finds the officers actions objectively unreasonable in light of the Cochran's clearly established rights under the Fourth Amendment and Fourteenth Amendment. Thus, these defendants are not entitled to qualified immunity under either standard.

19

determine whether they violated a constitutional or federal statutory right belonging to Cochran and, if a violation occurred, whether he transgressed a "clearly established right." *Saucier*, 533 U.S. at 201.

Having concluded that the Deputy Sheriffs Don and Dan Gilliam violated Cochran's Fourth Amendment rights, as well as Cochran's Fourteenth Amendment rights, the Court must now address whether each right was so clearly established that a reasonable officer would understand that his or her actions would violate that right. *See Jacobsen*, 304 F.3d at 569. The Court concludes that Defendants Dan and Don Gilliam are not entitled to qualified immunity with respect to the Fourth and Fourteenth Amendment claims.

First, with respect to the Fourth Amendment claims, Cochran's interest in ownership of his personal property was evident at the time of his eviction. Moreover, the legal precedent cited above was clearly established. Thus, a reasonable officer would have known that seizure of Cochran's personal property violated his Fourth Amendment rights. In fact, by Don Gilliam's own admission, he recognized that some other type of process or authority was due before the Williams could divest Cochran from his personal property.

Although not specifically argued by the Defendants, the facts of this case are distinguishable from *Thomas, supra,* wherein the majority found that the officers were entitled to qualified

immunity on the Fourth Amendment claim. *Thomas*, 304 F.3d at 583 (Gilman, J., writing for the majority). In that case the plaintiffs were being evicted from a women's shelter, and the *Thomas* court reasoned that a reasonable person in the officer's position would not have known that the eviction violated the plaintiffs' Fourth Amendment right to be free of the unreasonable seizure of their real estate interest where there was no physical control of the property in question. *Id.* By contrast, Cochran's right to be free of unreasonable seizures of his personal property is well established under *Soldal*, where, as here, physical control of the property in question was at issue.

Additionally, Cochran's right to due process under the Fourteenth Amendment was clearly established at the time the Warrant for Possession was executed. Kentucky law sets forth adequate procedures for a landlord to recover past due rent. A reasonable person in the deputy sheriffs' position would have known that due process was required before divesting Cochran of his personal property.

Any deputy sheriff familiar with the facts and procedures necessary for the seizure of property in the context of an eviction or the enforcement of a judgment would have realized that the proper procedures were not followed. At the very least, it should have been apparent to a reasonable deputy sheriff that no amount owed was specified in the warrant. In fact, the Warrant for

Possession was silent as to any award of fees, costs or rent and did not mention personal property at all. Under such circumstances, a reasonable person in the deputy sheriff's position would have or should have known that Cochran's due process rights were being violated.

## G. Claims against Sheriff Folger

Plaintiff claims that Sheriff Folger failed to adequately train his deputies and that such failure amounted to deliberate indifference. However, the record is void of any reference to the policies of the Sheriff's Department or training relevant to eviction and similar procedures. Plaintiff has not shown even a scintilla of evidence necessary to establish the elements of the claim, (1) that the Sheriff's training program is inadequate, (2) that the inadequacy is the result of deliberate indifference, and (3) that the inadequacy is closely related to or actually caused Cochran's injury herein. See *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992) (citing *Hill v McIntyre*, 884 F.2d 271, 275 (6th Cir 1989). "Mere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to prove liability." *Miller v. Calhoun County*, 408 F.3d 803, 816 (6th Cir. 2005) (citing *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998)). Without any evidence in support of Cochran's claim, this Court cannot determine that sufficient evidence exists on which a jury could

find in his favor. *See Celotex,* 477 U.S. at 324.

The record is void of any evidence indicating that Sheriff Folger was present, participated in or had knowledge of the events on September 8, 2008, and, thus, to the extent that the Complaint alleges that Sheriff Folger violated Cochran's rights under the Fourth, Fifth and Fourteenth Amendments, those claims are dismissed. Sheriff Folger is entitled to summary judgment as a matter of law on all claims against him.

## H. Official capacity claims

Official capacity claims "represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "An official -capacity suit is not a claim against the official personally, for the real party in interest is the entity." *Rothhaupt v. Maiden,* 144 Fed.Appx. 465, 471 (6th Cir. 2005) (quoting *Graham,* 473 U.S. at 166 (internal quotations omitted)). To establish liability on an official capacity claim, the plaintiff must present sufficient evidence to show that "the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law." *Graham*, 473 U.S. at 166 (internal citations and quotation marks omitted).

Cochran has failed to provide any evidence, let alone identify an issue of fact, as to whether the Sheriff Department's policies

and procedures contributed or caused the constitutional deprivations described above. While Cochran's constitutional rights were violated, there is no evidence that these violations were the result of a department-wide policy or the product of approved procedures. Consequently, Defendants are entitled to summary judgment in their official capacity.

## I.  State law claim

Defendants allege that Cochran has failed to show that he suffered any emotional distress, which is a necessary element of the state law claim of outrage or intentional infliction of emotional distress. *Craft v. Rice*, 671 S.W.2d 247, 251 (1984). Cochran failed to set forth any evidence or argument as to this claim in his Response to the Motion for Summary Judgment. Accordingly, this Court finds that there is no material issue of fact and that Defendants are entitled to summary judgment as a matter of law on Cochran's state law claim of intentional infliction of emotional distress.

## J.  Punitive damages

A jury "may be permitted to assess punitive damages in an action under 42 U.S.C. § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). There is sufficient evidence in the record upon which a reasonable jury

could determine that punitive damages were appropriate. Consequently, Defendant's motion for summary judgment on this issue is denied.

## CONCLUSION

Accordingly, for the reasons discussed, **IT IS ORDERED:**

(1) That the Defendants' Motion to for Summary Judgment [Record No. 46] is **GRANTED IN PART AND DENIED IN PART** consistent with this Memorandum Opinion and Order;

(2) Plaintiff's claims under the Fourth Amendment and Fourteenth Amendment due process clause, based on 42 U.S.C. § 1983, remains pending;

(3) Plaintiff's claims that his Fifth Amendment claim for taking without just compensation, based on 42 U.S.C. § 1983, is **DISMISSED** with prejudice;

(4) Plaintiff's failure to train claim against Defendant, Curt Folger, is **DISMISSED** with prejudice;

(5) Plaintiff's claims against all Defendants in their official capacities are **DISMISSED** with prejudice; and

(6) Plaintiff's claim for punitive damages remains pending.

This the 16th day of September, 2010.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge